**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEPHEN BURR, Individually and On Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>          v.<br><br>EQUITY BANCSHARES, INC., BRAD S. ELLIOTT, and GREGORY H. KOSSOVER,<br><br>                              Defendants. | Case No. 19-cv-04346<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Stephen Burr ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Equity Bancshares, Inc. ("Equity Bancshares" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Equity Bancshares; and (c) review of other publicly available information concerning Equity Bancshares.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Equity Bancshares securities between May 11, 2018 and April 22, 2019, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Equity Bancshares purports to provide a broad range of financial services through its wholly-owned subsidiary Equity Bank with branches in Arkansas, Kansas, Missouri, and Oklahoma.

3.      On January 24, 2019, the Company disclosed that, during fourth quarter 2018, one credit relationship was downgraded to Watch and Substandard for $19 million and $9 million, respectively.

4.      On this news, the Company's share price fell $2.14, or more than 6%, to close at $32.15 per share on January 24, 2019, on unusually heavy trading volume.

5.      On April 22, 2019, the Company disclosed a $14.5 million provision for loss against the credit relationship, resulting in a $4.1 million net loss for first quarter 2019.

6.      On this news, the Company's share price fell $4.76, or more than 16%, to close at $24.71 per share on April 23, 2019, on unusually heavy trading volume.

7.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate internal controls to assess credit risk; (2) that, as a result, certain of the Company's loans posed an increased risk of loss; (3) that, as a result, the Company was reasonably likely to incur significant losses for certain substandard loans; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

8.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

9.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

10.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

11.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

12.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

13.     Plaintiff Stephen Burr, as set forth in the accompanying certification, incorporated by reference herein, purchased Equity Bancshares securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading

statements and/or material omissions alleged herein.

14.     Defendant Equity Bancshares is incorporated under the laws of Kansas with its principal executive offices located in Wichita, Kansas.  Equity Bancshares's common stock trades on the NASDAQ exchange under the symbol "EQBK."

15.     Defendant Brad S. Elliott ("Elliott") was the Chief Executive Officer of the Company at all relevant times.

16.     Defendant Gregory H. Kossover ("Kossover") was the Chief Financial Officer ("CFO") of the Company at all relevant times.

17.     Defendants Elliott and Kossover (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.   The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Equity Bancshares purports to provide a broad range of financial services through its wholly-owned subsidiary Equity Bank with branches in Arkansas, Kansas, Missouri, and Oklahoma.

### Materially False and Misleading
### Statements Issued During the Class Period

19.     The Class Period begins on May 11, 2018. On that day, the Company filed its

quarterly report on Form 10-Q with the SEC for the period ended March 31, 2018 (the "1Q18 10-Q"), in which it reported $8.71 million net income and $1.17 million provision for loan losses. Therein, the Company stated that its "disclosure controls and procedures are effective."

20.     Regarding the provision for loan losses, the Company stated in the 1Q18 10-Q, in relevant part:

> *llowance for Loan Losses*:  The allowance for loan losses is a valuation allowance for probable incurred credit losses.  Loan losses are charged against the allowance when management believes the collectability of a loan balance is unlikely.  Subsequent     recoveries,     if     any,     are     credited     to     the allowance.  Management estimates the allowance balance required using past loan loss experience, the nature and volume of the portfolio, information about specific borrower situations and estimated collateral values, economic conditions, and other factors.  A loan review process, independent of the loan approval process, is utilized by management to verify loans are being made and administered in accordance with company policy, to review loan risk grades and potential losses, to verify that potential problem loans are receiving adequate and timely corrective measures to avoid or reduce losses, and to assist in the verification of the adequacy of the loan loss reserve.  Allocations of the allowance may be made for specific loans, but the entire allowance is available for any loan that, in management's judgment, should be charged off.
>
> The allowance consists of specific and general components. The specific component relates to loans that are individually classified as impaired.  If a loan is impaired, a portion of the allowance is allocated so that the loan is reported net at the present value of estimated future cash flows using the loan's existing rate or at the fair value of collateral if repayment is expected solely from the sale of the collateral.  Troubled debt restructurings are separately identified for impairment disclosures and are measured at the present value of estimated future cash flows using the loan's effective rate at inception. If a troubled debt restructuring is considered to be a collateral dependent loan, the loan is reported, net, at the fair value of the collateral.  For troubled debt restructurings that subsequently default, we determine the amount of reserve in accordance with the accounting policy for the allowance for loan losses.
>
> The general component of the allowance for loan losses covers non-impaired loans and is based on historical loss experience adjusted for current factors.  The historical loss experience is determined by portfolio and class and is based on the actual loss history experienced by us.  This actual loss experience is then adjusted by comparing current conditions to the conditions that existed during the loss history.  We consider the changes related to (i) lending policies, (ii) economic conditions, (iii) nature and volume of the loan portfolio and class, (iv) lending staff, (v) volume and severity of past due, non-accrual, and risk graded loans, (vi) loan review system, (vii) value of underlying collateral for collateral dependent loans, (viii) concentration levels, and (ix) effects of other external factors.

* * *

**Provision for Loan Losses**

We maintain an allowance for loan losses for probable incurred credit losses.  The allowance for loan losses is increased by a provision for loan losses, which is a charge to earnings, and subsequent recoveries of amounts previously charged-off, but is decreased by charge-offs when the collectability of a loan balance is unlikely.  Management estimates the allowance balance required using past loan loss experience, the nature and volume of the loan portfolio, information about specific borrower situations and estimated collateral values, discounted cash flows, economic conditions, and other factors including regulatory guidance, as described in "Financial Condition—Allowance for loan losses."  As these factors change, the amount of the loan loss provision changes.

21.    On July 19, 2018, the Company announced its second quarter 2018 financial results, stating in a press release, in relevant part:

Equity Bancshares, Inc. (NASDAQ: EQBK), ("Equity", "we", "us", "our"), the Wichita-based holding company of Equity Bank, reported its unaudited results for the quarter ended June 30, 2018, including net income allocable to common stockholders for the quarter of $6.9 million, or $0.44 per diluted share.  Year-to-date 2018 net income allocable to common stockholders was $15.6 million and $1.02 per diluted share.

* * *

Notable Items

- Income before taxes for the second quarter of 2018 was $8.8 million, or $0.56 per diluted share, compared to $9.4 million, or $0.76 per diluted share, for the same time period in 2017.  Income before taxes, adjusted to exclude merger expense, was a record $14.0 million, or $0.89 per diluted share, for the second quarter of 2018, compared to $9.5 million, or $0.77 per diluted share, for the second quarter of 2017.

- Stated diluted earnings per share in the second quarter of 2018 was $0.44.  Merger expenses, adjusted for estimated income tax, were $4.0 million in the second quarter of 2018, or $0.26 per diluted share.

- Net income allocable to common stockholders, adjusted for after-tax merger expense, was a record $10.9 million, or $0.69 per diluted share in the second quarter of 2018. Net income allocable to common stockholders, adjusted for after-tax merger expense of $84 thousand, was $6.4 million, or $0.52 per diluted share in the second quarter of 2017.

Highlights of Equity's growth include:

▪ Total loans held for investment of $2.41 billion at June 30, 2018, as compared to total loans held for investment of $2.10 billion at December 31, 2017.

▪ Total deposits were $2.64 billion at June 30, 2018, and $2.38 billion at December 31, 2017.  Signature deposits, or core deposits comprised of checking accounts, savings accounts and money market accounts, were $1.83 billion at June 30, 2018, compared to $1.61 billion at December 31, 2017.

▪ Total assets of $3.71 billion at June 30, 2018, compared to $3.17 billion at December 31, 2017.

▪ Book value per common share of $27.44 at June 30, 2018 and $25.62 at December 31, 2017.  Tangible book value per common share of $18.16 at June 30, 2018 and $17.61 at December 31, 2017.

22.    On August 9, 2018, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended June 30, 2018, which affirmed the previously announced financial results. Therein, the Company stated that its "disclosure controls and procedures are effective." Regarding the provision for loan losses, the Company made statements substantially similar to those identified in ¶20.

23.    On October 16, 2018, the Company announced its third quarter 2018 financial results, stating in a press release, in relevant part:

Equity Bancshares, Inc. (NASDAQ: EQBK), ("Equity", "we", "us", "our"), the Wichita-based holding company of Equity Bank, reported its unaudited results for the quarter ended September 30, 2018, including net income allocable to common stockholders for the quarter of $10.3 million, or $0.64 per diluted share.  Year-to-date 2018 net income allocable to common stockholders was $25.9 million and $1.66 per diluted share.

Notable Items:

▪ Income before taxes for the third quarter of 2018 was $13.3 million, or $0.82 per diluted share, compared to $7.2 million, or $0.58 per diluted share, for the same time period in 2017.  Income before taxes, adjusted to exclude merger expense, was $14.0 million, or $0.87 per diluted share, for the third quarter of 2018, compared to $8.3 million, or $0.66 per diluted share, for the third quarter of 2017.

▪ Stated diluted earnings per share in the third quarter of 2018 was $0.64. Merger expenses, adjusted for estimated income tax, were $581 thousand in the third quarter of 2018, or $0.04 per diluted share.

▪ Net income allocable to common stockholders, adjusted for after-tax merger expense, was $10.9 million, or $0.68 per diluted share in the third quarter of

2018.  Net income allocable to common stockholders, adjusted for after-tax merger expense of $748 thousand, was $5.9 million, or $0.47 per diluted share in the third quarter of 2017.

* * *

Highlights of Equity's growth include:

- Total loans held for investment of $2.56 billion at September 30, 2018, compared to total loans held for investment of $2.10 billion at December 31, 2017

- Total deposits were $2.82 billion at September 30, 2018, compared to $2.38 billion at December 31, 2017.  Signature deposits, or core deposits comprised of checking accounts, savings accounts and money market accounts, were $1.97 billion at September 30, 2018, compared to $1.61 billion at December 31, 2017.

- Total assets of $3.93 billion at September 30, 2018, compared to $3.17 billion at December 31, 2017.

- Book value per common share of $28.07 at September 30, 2018 and $25.62 at December 31, 2017.  Tangible book value per common share of $18.22 at September 30, 2018 and $17.61 at December 31, 2017.

24.    On November 9, 2018, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2018, which affirmed the previously announced financial results. Therein, the Company stated that its "disclosure controls and procedures are effective." Regarding the provision for loan losses, the Company made statements substantially similar to those identified in ¶20.

25.    The above statements identified in ¶¶19-24 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate internal controls to assess credit risk; (2) that, as a result, certain of the Company's loans posed an increased risk of loss; (3) that, as a result, the Company was reasonably likely to incur significant losses for certain substandard loans; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

26.    The truth began to emerge on January 24, 2019 when the Company disclosed that,

during fourth quarter 2018, one credit relationship was downgraded to Watch and Substandard for $19 million and $9 million, respectively.

27.    On this news, the Company's share price fell $2.14, or more than 6%, to close at $32.15 per share on January 24, 2019, on unusually heavy trading volume.

28.    On March 20, 2019, the Company filed its annual report on Form 10-K for the period ended December 31, 2018 and reported $35.83 million net income. Regarding potential problem loans, the Company stated, in relevant part:

> We categorize loans into risk categories based on relevant information about the ability of borrowers to service their debt such as: current financial information, historical payment experience, credit documentation, public information, and current economic trends, among other factors. Loans are analyzed individually and classified based on credit risk. Consumer loans are considered pass credits unless downgraded due to payment status or reviewed as part of a larger credit relationship. We use the following definitions for risk ratings:
>
> *Pass:* Loans classified as pass do not have any noted weaknesses and repayment of the loan is expected. These loans are considered unclassified.
>
> *Special Mention:* Loans classified as special mention have a potential weakness that deserves management's close attention. If left uncorrected, these potential weaknesses may result in deterioration of the repayment prospects for the loan or of our credit position at some future date. These loans are considered classified.
>
> *Substandard:* Loans classified as substandard are inadequately protected by the current net worth and paying capacity of the obligor or of the collateral pledged, if any. Loans so classified have a well-defined weakness or weaknesses that jeopardize the liquidation of the debt. They are characterized by the distinct possibility that the institution will sustain some loss if the deficiencies are not corrected. These loans are considered classified.
>
> *Doubtful:* Loans classified as doubtful have all the weaknesses inherent in those classified as substandard, with the added characteristic that the weaknesses make collection or liquidation in full, on the basis of currently existing facts, conditions, and values, highly questionable and improbable. These loans are considered classified.
>
> Potential problem loans consist of loans that are performing in accordance with contractual terms, but for which management has concerns about the borrower's ability to comply with repayment terms because of the borrower's potential financial difficulties. Potential problem loans are assigned a grade of special mention or substandard. At December 31, 2018, the Company had $52.9 million in potential problem loans which were not included in either non-accrual or 90 days past due categories, compared to $21.1 million at December 31, 2017.

29.     The above statements identified in ¶¶26, 28 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) that the Company lacked adequate internal controls to assess credit risk; (2) that, as a result, certain of the Company's loans posed an increased risk of loss; (3) that, as a result, the Company was reasonably likely to incur significant losses for certain substandard loans; and (4) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

30.     On April 22, 2019, the Company disclosed a $14.5 million provision for loss against a credit relationship had impacted its financial results for first quarter 2019. The Company stated, in relevant part:

> Net loss allocable to common stockholders was $4.1 million for the three months ended March 31, 2019, as compared to a net income allocable to common stockholders of $8.7 million for the three months ended March 31, 2018, a decrease of $12.8 million, principally related to the non-typical specific impairment.

> * * *

> "In the first quarter, we recorded a $14.5 million provision for loss against a credit relationship." [The Company's CEO further stated,] "However, it is important for us to convey we do not believe this represents a systemic trend; rather an isolated individual relationship which is unique to our portfolio."

> * * *

> The provision for loan losses was $15.6 million for the three months ended March 31, 2019, reflecting the non-typical specific impairment. The provision for loan losses was $1.2 million for the three months ended March 31, 2018.  For the three months ended March 31, 2019, we had net charge-offs of $760 thousand, as compared to net charge-offs of $352 thousand for the same period in 2018.

31.     On this news, the Company's share price fell $4.76, or more than 16%, to close at $24.71 per share on April 23, 2019, on unusually heavy trading volume.

### CLASS ACTION ALLEGATIONS

32.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Equity Bancshares securities between May 11, 2018 and April 22, 2019, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

33.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Equity Bancshares's common shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Equity Bancshares common stock were traded publicly during the Class Period on the NASDAQ. Record owners and other members of the Class may be identified from records maintained by Equity Bancshares or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

34.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

35.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

36.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)      whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Equity Bancshares; and

(c)      to what extent the members of the Class have sustained damages and the proper measure of damages.

37.      A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

38.      The market for Equity Bancshares's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Equity Bancshares's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Equity Bancshares's securities relying upon the integrity of the market price of the Company's securities and market information relating to Equity Bancshares, and have been damaged thereby.

39.      During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Equity Bancshares's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Equity Bancshares's business, operations, and prospects as alleged herein.

40.      At all relevant times, the material misrepresentations and omissions particularized

in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Equity Bancshares's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

41.      Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

42.      During the Class Period, Plaintiff and the Class purchased Equity Bancshares's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

43.      As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Equity Bancshares, their control over, and/or receipt and/or modification of Equity Bancshares's allegedly materially

misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Equity Bancshares, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

44.     The market for Equity Bancshares's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Equity Bancshares's securities traded at artificially inflated prices during the Class Period. On June 19, 2018, the Company's share price closed at a Class Period high of $43.87 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Equity Bancshares's securities and market information relating to Equity Bancshares, and have been damaged thereby.

45.     During the Class Period, the artificial inflation of Equity Bancshares's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Equity Bancshares's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Equity Bancshares and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

46.     At all relevant times, the market for Equity Bancshares's securities was an efficient market for the following reasons, among others:

(a)     Equity Bancshares shares met the requirements for listing, and was listed and

actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Equity Bancshares filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Equity Bancshares regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Equity Bancshares was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

47.     As a result of the foregoing, the market for Equity Bancshares's securities promptly digested current information regarding Equity Bancshares from all publicly available sources and reflected such information in Equity Bancshares's share price.  Under these circumstances, all purchasers of Equity Bancshares's securities during the Class Period suffered similar injury through their purchase of Equity Bancshares's securities at artificially inflated prices and a presumption of reliance applies.

48.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Equity Bancshares who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

50.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

51.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Equity Bancshares's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

52.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which

operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Equity Bancshares's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

53.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Equity Bancshares's financial well-being and prospects, as specified herein.

54.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Equity Bancshares's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Equity Bancshares and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

55.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the

Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

56.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Equity Bancshares's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

57.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Equity Bancshares's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Equity Bancshares's securities during the Class Period at artificially high prices and were damaged thereby.

58.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Equity Bancshares was experiencing, which were not disclosed by Defendants, Plaintiff and

other members of the Class would not have purchased or otherwise acquired their Equity Bancshares securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

59.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

62.     Individual Defendants acted as controlling persons of Equity Bancshares within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

63.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

64.     As set forth above, Equity Bancshares and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 13, 2019

**GLANCY PRONGAY & MURRAY LLP**

By: s/ Lesley F. Portnoy
Lesley F. Portnoy (LP-1941)
230 Park Avenue, Suite 530
New York, New York 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
Email: lportnoy@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:   (310) 201-9160
Email: info@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff Stephen Burr*

## SWORN CERTIFICATION OF PLAINTIFF

Equity Bancshares, Inc., **SECURITIES LITIGATION**

I, Stephen Burr, certify:

1.  I have reviewed the complaint and authorized its filing and/or adopted its allegations.

2.  I did not purchase Equity Bancshares, Inc., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3.  I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4.  My transactions in Equity Bancshares, Inc., during the class period set forth in the Complaint are as follows:

    See Attached Transactions

5.  I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6.  I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

    ____ Check here if you are a current employee or former employee of the defendant Company.

    I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 4/29/19

(Please Sign Your Name Above)

[REDACTED]

**Stephen Burr's Transactions in
Equity Bancshares, Inc. (EQBK)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 06/13/2018 | Bought | 200 | $41.7616 |
| 06/14/2018 | Bought | 100 | $41.2000 |