**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- X
                        :

STEPHEN BURR and DAVID
TANGEMAN, individually and on behalf of  :
all others similarly situated,

          Plaintiffs,

     -against-                    Case No. 19-cv-04346-AJN

EQUITY BANCSHARES, INC., BRAD S.
ELLIOTT, and GREGORY H.
KOSSOVER,

          Defendants.

------------------------------------------------------- X

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED**
**CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT AND AUTHORITIES.................................................................................... 2

    I.       Plaintiffs Have Not Pleaded a Materially False or Misleading Statement or Omission ................................................................................................................. 2

           A.     Defendants Made No Misstatements Concerning the Gigi's and Gatti's Loans ............................................................................................ 5

           B.     Defendants Made No Misstatements About Equity Bancshares' Credit Quality ........................................................................................ 9

           C.     Defendants Made No Misstatements in Financial Statements.................. 10

    II.      Plaintiffs Fail to Allege a Cogent and Compelling Inference of Scienter ........... 11

           A.     The Sovrano FDDs Do Not Give Rise to an Inference of Scienter ......... 11

           B.     CW1's Allegations Do Not Give Rise to an Inference of Scienter.......... 12

           C.     The January 24, 2019 Statements Do Not Give Rise to an Inference of Scienter ....................................................................................... 13

           D.     The PSLRA's Comparative Analysis Weighs in Favor of Nonfraudulent Intent ............................................................................... 14

CONCLUSION.................................................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
    752 F.3d 173 (2d Cir. 2014)..........................................................................................13

*City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*,
    129 F. Supp. 3d 48 (S.D.N.Y. 2015)................................................................................6

*ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...........................................................................................10

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011).............................................................................................5

*Fila v. Pingtan Marine Enter. Ltd.*,
    195 F. Supp. 3d 489 (S.D.N.Y. 2016)..............................................................................4

*Frankfurt-Tr. Inv. Lux. AG v. United Techs. Corp.*,
    336 F. Supp. 3d 196 (S.D.N.Y. 2018)............................................................................15

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)............................................................................10

*Harris v. AmTrust Fin. Servs., Inc.*,
    135 F. Supp. 3d 155 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016).........................11

*Haw. Structural Irownworkers Pension Trust Fund v. AMC Entm't Holdings, Inc.*,
    No. 18-CV-00299 (AJN), 2019 WL 4601644 (S.D.N.Y. Sept. 23, 2019) ...............................4

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*,
    936 F.2d 759 (2d Cir. 1991)............................................................................................4

*In re ITT Educ. Servs., Inc. Sec. & S'holder Derivative Litig.*,
    859 F. Supp. 2d 572 (S.D.N.Y. 2012).............................................................................4

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2010)..........................................................................................13

*Lloyd v. CVB Fin. Corp.*,
    811 F.3d 1200 (9th Cir. 2016) ...............................................................................8, 9, 10

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)..............................................................................15

*Lynch v. Amoruso*,
   232 F. Supp. 3d 460 (S.D.N.Y. 2017)..................................................................................15

*Martin v. Quartermain*,
   732 F. App'x 37 (2d Cir. 2018) ..........................................................................................12

*In re Michael Stapleton Assocs. Ltd.*,
   No. 17-cv-5468 (AJN), 2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018)..................................15

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000)................................................................................................11

*Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*,
   951 F. Supp. 2d 479 (S.D.N.Y. 2013)..............................................................................5, 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..............................................................................................5, 6, 7, 8

*In re Pretium Res. Inc. Sec. Litig.*,
   256 F. Supp. 3d 459 (S.D.N.Y. 2017)..................................................................................12

*Richman v. Goldman Sachs Grp., Inc.*,
   868 F. Supp. 2d 261 (S.D.N.Y. 2012)....................................................................................8

*Silsby v. Icahn*,
   17 F. Supp. 3d 348 (S.D.N.Y. 2014)....................................................................................15

*Sjunde AP-Fonden v. Gen. Elec. Co.*,
   --- F. Supp. 3d ----, 2019 WL 4094559 (S.D.N.Y. 2019) ..............................................6, 8, 15

*Stephenson v. PricewaterhouseCoopers, LLP*,
   768 F. Supp. 2d 562 (S.D.N.Y. 2011)....................................................................................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................................2, 10, 11

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016)..........................................................................................6, 7, 8

*Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
   No. 14 CV 3876-LTS, 2016 WL 1261135 (S.D.N.Y. Mar. 30, 2016) ................................6, 8

*Wilbush v. Ambac Fin. Grp., Inc.*,
   271 F. Supp. 3d 473 (S.D.N.Y. 2017)..........................................................................5, 6, 8, 11

*Woodward v. Raymond James Fin., Inc.*,
   732 F. Supp. 2d 425 (S.D.N.Y. 2010)..................................................................................10

**Rules and Statutes**

Individual Practice in Civil Cases Rule 3(F) ...............................................................................15

## INTRODUCTION

Plaintiffs' opposition underscores the infirmity at the heart of this case: Despite alleging repeatedly, in bold and italicized font, that Defendants engaged in a so-called "extend-and-pretend scheme" by "repapering" loans to "effectively insolvent" borrowers with the specific aim of avoiding loan loss provisions, the record properly before this Court—including the very documents cited in Plaintiffs' Amended Complaint—flatly refutes Plaintiffs' theory and confirms that all of the purported misstatements and omissions are inactionable under settled Second Circuit law.[1]

By their own terms, the loan agreements in question—which Plaintiffs neglect to cite *even once* in their opposition—restructured Gatti's and Gigi's debts in exchange for considerable security to Equity Bancshares, including $25,000 origination fees, collateralization of the companies' assets, personal guaranties from the companies' owners, and covenants ensuring that the borrowers would remain capable of repaying the loans. Likewise, the most recent financial statements of Gatti's parent company, Sovrano, LLC,[2] affirmed that "Management believes that the Company's projected revenue receipts and available debt financing . . . will be sufficient to fund its operations through at least one year from the audit opinion date" of May 31, 2018, Compl. Ex. 1 at 7, and there is no dispute that a market emerged for the sale of Gatti's in Q4 2018, ¶ 122. Most importantly, Equity Bancshares' SEC filings left no doubt that management's decisions surrounding loan classification, impairment, and loss reserves were business judgments turning on a host of factors, all of which were directed at a single prediction: The likelihood that Equity Bancshares would be able to collect on a given loan, whether through repayment, execution on collateral, or otherwise. In other words, the decisions underlying all of Plaintiffs' charges of securities fraud are quintessential matters of opinion.

---

[1] Unless otherwise noted, capitalized terms are given the same meaning as in the Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 32 ("Mot."). Citations to "Opp." are to Plaintiffs' Opposition to Defendants' Motion to Dismiss, ECF No. 34.

[2] Plaintiffs apparently declined to obtain comparable financials for any of the Gigi's entities.

Beyond their own conclusory assertions, which misrepresent Defendants' remarks and evince a fundamental misunderstanding of the impairment inquiry, Plaintiffs cite no particularized facts demonstrating that any of Defendants' statements were false, misleading, or disbelieved by the speaker at the time. Nor, for that matter, do Plaintiffs advance a "cogent" inference of scienter that is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

## ARGUMENT AND AUTHORITIES

### I.    Plaintiffs Have Not Pleaded a Materially False or Misleading Statement or Omission

Plaintiffs' Section 10(b) claims all rest on the same core premise: Equity Bancshares knew or should have known that Sovrano, Gatti's, and Gigi's were "effectively insolvent" in May 2018, rendering their loans uncollectible, and rather than declaring the loans to be classified or impaired, Equity Bancshares and its top executives "repapered" the loans to avoid taking a provision for loan losses and "misled investors about the likelihood of impairment" and the quality of the bank's credit relationships. Opp. at 1, 5, 13, 17. That premise is flawed on all counts.

First and foremost, Plaintiffs fail to grasp the basic accounting concepts on which they found their fraud charges. As explained in Equity Bancshares' SEC filings, which Plaintiffs quote liberally in their Amended Complaint, the calculation of loan loss reserves reflects "management's best estimate of probable incurred losses in [the bank's] loan portfolio," Ex. A at 27, based on factors including "past experience, the nature and volume of the portfolio, information about specific borrower situations and estimated collateral values, and economic conditions," ¶ 38. Loan impairment calls for a similarly predictive inquiry: A loan is impaired when, "based on current information and events, it is probable that [the bank] will be unable to collect all contractual principal and interest due according to the terms of the loan agreement." ¶ 37. Far from a rote calculation of mathematical inputs, impairment entails a managerial judgment call that is case-

specific and takes into account a wide range of considerations. The same is true of the related, but distinct, process of assigning risk ratings to loans. Neither illiquidity nor payment delinquency will inexorably compel loan classification, let alone impairment, and it is common for first priority secured lenders to be repaid in full even in cases of bankruptcy.

Against this backdrop, Plaintiffs' contention that "Defendants' motion to dismiss does not provide a sufficient explanation as to why Equity Bank failed to impair these $30 million of loans" before Q1 2019 reveals a startling misapprehension of the impairment analysis. Opp. at 4. The explanation could hardly be clearer: Using the holistic process laid out in its SEC filings, Equity Bancshares assessed the current state of the Gigi's and Gatti's loans and determined—based on the terms of the loan agreements, the value of the collateral and the guaranties from the borrowers' principals, and the contemporaneous market interest in the sale of Gatti's—that the loans were not impaired. *See* Mot. at 8–10, 15, 21–22. This was true even after the borrowers filed for bankruptcy, as Plaintiffs concede. *See* ¶ 122; *see also* Ex. B at 74.

Second, Plaintiffs steadfastly refuse to acknowledge the plain text of the documents attached to their Amended Complaint. The loan agreements, for instance, plainly consolidated and refinanced Equity Bancshares' existing loans to Gigi's and Gatti's and did far more than just extend the loans' maturity dates, as Plaintiffs imply. Both the Consolidated Gatti's Loan and the Consolidated Gigi's Loan were secured by first liens on all business assets of the borrowers, backed by personal guaranties from their principals R.J. Phillips and Kyle Mann, subject to $25,000 origination fees, and contingent on the borrowers' agreement to make covenants limiting the businesses' leverage and disposition of assets and to deliver corporate and personal financial statements to the bank. *See* Compl. Ex. 3 at 7–8, 12–17; Compl. Exs. 4, 5; Compl. Ex. 10 at 6–8, 12–17. Further, the Phillips Loan, which Plaintiffs tar as another "repaper[ing]" to serve "the

insolvent Gatti's and Gigi's," Opp. at 4, was secured by a deed on real property in Sea Island, Georgia, in addition to the same collateral securing the Consolidated Loans, and was expressly conditioned on cross-collateralization of the Consolidated Loans, Compl. Ex. 13 at 1–2.

Without so much as citing any of these agreements across 32 pages of briefing, much less contending with their economic terms, Plaintiffs repeatedly and emphatically paint the loans as "repapered" and accuse Defendants of orchestrating an "'extend-and-pretend' scheme." Setting aside the fact that Plaintiffs *still* have made no effort to define "repaper," *see* Mot. at 14 n.5, or to confront the fundamental illogic of their "extend-and-pretend" theory, *see* Mot. at 27, Plaintiffs' unsupported assertion is no substitute for particularized facts. A loan is not "repapered" simply because Plaintiffs affix it that label—particularly where, as here, the substance of the agreement refutes that characterization. After all, the Court need not credit legal conclusions couched as factual allegations, *Fila v. Pingtan Marine Enter. Ltd.*, 195 F. Supp. 3d 489, 493 (S.D.N.Y. 2016), and "bolding and italicizing does little to satisfy the PSLRA's specificity requirement," *In re ITT Educ. Servs., Inc. Sec. & S'holder Derivative Litig.*, 859 F. Supp. 2d 572, 578 (S.D.N.Y. 2012).[3]

The same is true of the Sovrano, LLC financial disclosure documents ("FDDs"), which Plaintiffs cleave to as evidence of the supposed "insolvency" of the "Sovrano Parties." The 2018 FDD expressed in no uncertain terms management's belief "that the Company's projected revenue receipts and available debt financing . . . will be sufficient to fund its operations through at least one year" from May 31, 2018. Compl. Ex. 1 at 7. It likewise lists EBITDA of $2.7 million and

---

[3] Plaintiffs object to the Court's consideration of the contents of the loan agreements, portraying the latter as "counter-facts." Opp. at 6, 14 n.12. It well settled that a motion to dismiss can be resolved on "documents attached to or incorporated by reference in the complaint," as well as "documents integral to and relied upon in the complaint, even if not attached or incorporated by reference." *Haw. Structural Irownworkers Pension Trust Fund v. AMC Entm't Holdings, Inc.*, No. 18-CV-00299 (AJN), 2019 WL 4601644, at *1 (S.D.N.Y. Sept. 23, 2019); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.*, 936 F.2d 759, 762 (2d Cir. 1991).

adjusted EBITDA of $3.4 million. *Id.* at 18. Notwithstanding Plaintiffs' unsupported assertion that these figures—which an independent auditor determined to "present fairly, in all material respects, the financial position of the company," *id.* 1 at 4,—are "vastly overstated," ¶ 105, these financial reports, on their face, present powerful evidence undercutting Plaintiffs' narrative. As courts in this district have recognized, "flags are not red merely because the plaintiff calls them red." *Okla. Firefighters Pension & Ret. Sys. v. Student Loan Corp.*, 951 F. Supp. 2d 479, 497 (S.D.N.Y. 2013) (quoting *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 574–75 (S.D.N.Y. 2011)).

Third, Plaintiffs plead no facts indicating, with the particularity required by the PSLRA and Rule 9(b), that Defendants possessed non-public information contrary to their public statements, much less that any of their statements actually conflicted with that information or were rendered materially misleading by the omission of same. *See, e.g.*, *Wilbush v. Ambac Fin. Grp., Inc.*, 271 F. Supp. 3d 473, 484–85 (S.D.N.Y. 2017).

### A.    Defendants Made No Misstatements Concerning the Gigi's and Gatti's Loans

By Plaintiffs' account, the gravamen of this set of allegations is that "Defendants misled investors about the likelihood of impairment of the Gigi's and Gatti's loans." Opp. at 13. Consistent with the above discussion, Second Circuit law is settled that "determining the adequacy of loan loss reserves"—a process in which loan impairment plays a central role—"is not a matter of objective fact," but rather "management's opinion or judgment about what, if any, portion of amounts due on the loans ultimately might not be collectible." *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 113 (2d Cir. 2011). Plaintiffs aver that *Fait* predates the Supreme Court's *Omnicare* decision[4] and so "no longer represents controlling law." Opp. at 21. That may be true as to *Fait*'s articulation of the pleading

---

[4] *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015).

standards for securities fraud claims grounded on statements of opinion, *see Tongue v. Sanofi*, 816

F.3d 199, 209 (2d Cir. 2016), but nothing in *Omnicare* alters *Fait*'s holding that the calculation of

loan losses is a matter of opinion, as post-*Omnicare* decisions within this circuit confirm.[5]

To found a claim for securities fraud on an expression of opinion, Plaintiffs must plead

particularized facts indicating that (1) "the speaker did not hold the belief she professed," (2) "the

supporting facts she supplied were untrue," or (3) although the speaker "sincerely held" the belief

and it was "otherwise true as a matter of fact, . . . the speaker omit[ted] information whose omission

makes the statement misleading to a reasonable investor." *Tongue*, 816 F.3d at 210 (quoting

*Omnicare*, 575 U.S. at 185–86). Where, as here, Plaintiffs advance an omission theory of liability,

*see* Opp. at 23, it does not suffice to "just say that the issuer failed to reveal [the] basis for the

opinion," or to "merely recite the statutory language or offer bare conclusory allegations that the

issuer lacked reasonable grounds for the belief it stated." *City of Westland*, 129 F. Supp. 3d at 71

(internal quotation marks and alterations omitted). "Rather, the plaintiff 'must identify particular

(and material) facts going to the basis for the issuer's opinion—facts about the inquiry the issuer

did or did not conduct or the knowledge it did or did not have—whose omission makes the opinion

statement at issue misleading to a reasonable person reading the statement fairly and in context.'"

*Id.* at 71–72. And that context is key: "Reasonable investors understand that opinions sometimes

rest on a weighing of competing facts," and "an investor reads each statement within [a financial

report] in light of all its surrounding text, including hedges, disclaimers, and apparently conflicting

information," not to mention "the customs and practices of the relevant industry"; it follows that

---

[5]*See, e.g.*, *Sjunde AP-Fonden v. Gen. Elec. Co.*,--- F. Supp. 3d ----, 2019 WL 4094559, at \*9
(S.D.N.Y. 2019) ("There is no dispute that, because there is no 'objective standard for setting . . .
reserves,' such statements are to be analyzed as opinions.")(internal citations omitted); *accord*
*Wilbush*, 271 F. Supp. 3d at 490–91; *Waterford Twp. Police & Fire Ret. Sys. v. Reg'l Mgmt. Corp.*,
No. 14 CV 3876-LTS, 2016 WL 1261135, at \*11 (S.D.N.Y. Mar. 30, 2016); *City of Westland*
*Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 68 (S.D.N.Y. 2015).

"an omission that renders misleading a statement of opinion when viewed in a vacuum may not do so once that statement is considered, as is appropriate, in a broader frame." *Omnicare*, 575 U.S. at 189–90. Equally, a statement of opinion is not misleading "just because external facts show the opinion to be incorrect," or because "an issuer knows, but fails to disclose, some fact cutting the other way." *Tongue*, 816 F.3d at 212 (quoting *Omnicare*, 575 U.S. at 188–89).

Applying these standards, there can be no doubt that Plaintiffs have failed to state a claim under Section 10(b) in connection with Equity Bancshares' statements regarding the potential impairment of the Gatti's and Gigi's loans. Citing a bloc of 48 consecutive paragraphs in the Amended Complaint, Plaintiffs insist that "Defendants knew, for months (and even years) that there were serious doubts about the Sovrano Parties', Equity Bank's largest customers, ability to repay and consequently, that impairment was necessary." Opp. at 14 (citing ¶¶ 66–114). In support, Plaintiffs pluck out six putative facts about which they claim Defendants had knowledge: (1) the borrowers' bankruptcy filings in January 2019; (2) the "previous[] . . . repaper[ing]" of the loans; (3) the asserted purpose of the Phillips Loan to supply "operating capital for Gigi's and Gatti's because the entities were insolvent"; (4) the borrowers' request for additional funds in December 2018; (5) the improper classification of the loans "at the instruction of Defendants Elliott and Kossover"; and (6) the collapse of the prospective sale of Gatti's in late 2018–early 2019. *Id.*

As a threshold matter, several of these facts—the purported "repapering" of the loans, insolvency of Gigi's and Gatti's at the time of the Phillips Loan, internal misclassification of the loans at Defendants' direction, and abandonment of the sale of Gatti's—are not pleaded with the requisite particularity or are flatly contradicted by the substance of the referenced records. *See* Mot. at 30–32. In any event, though, *none* of the facts that Plaintiffs seize on to impugn Equity Bancshares' assessment of the loans—a judgment that found expression exclusively in financial

statements and investor calls bracketed with extensive cautionary language[6]—conflict with the fair import of Defendants' statements. That is, the facts do not "conflict with what a reasonable investor would take from" Equity Bancshares' impairment analysis, *Omnicare*, 575 U.S. at 189, given the array of factors bearing on impairment and the explicit warnings accompanying that analysis. *See Tongue*, 816 F.3d at 210–11. Indeed, Plaintiffs do not dispute that Equity Bancshares ultimately disclosed that it evaluated the loans in the wake of the borrowers' bankruptcies and found no need for impairment, ¶ 122, nor do they present any grounds for questioning that conclusion beyond their own say-so and the bare fact of the later impairment.[7]

In sum, there is nothing distinguishing this case from the litany of decisions in this Circuit rejecting securities fraud claims premised on allegedly false or misleading opinions, including specifically opinions concerning loan losses and reserves. *See Sjunde*, 2019 WL 4094559, at *10–11; *Wilbush*, 271 F. Supp. 3d at 490–91; *Waterford Twp.*, 2016 WL 1261135, at *11; *Okla. Firefighters*, 951 F. Supp. 2d at 498.[8]

---

[6] Contrary to Plaintiffs' averment, Opp. at 13 n.11, the warnings accompanying all of Defendants' statements are relevant not only to the application of the PSLRA safe harbor, but also to the question of whether Defendants' opinion statements are misleading by omission. *See Tongue*, 816 F.3d at 211. Regardless, Plaintiffs' perfunctory claim that these warnings fall beyond the safe harbor is not well taken, given that courts in this district have not hesitated to credit comparable warnings in dismissing Section 10(b) claims. *See Wilbush*, 271 F. Supp. 3d at 491–92 (citing cases).

[7] Nor, for that matter, do Plaintiffs identify any duty to disclose the bankruptcies. *See* Mot. at 24–25. While Plaintiffs maintain that "Defendants put the issue in play" when discussing impairment because "the bankruptcies would (and did) impact 'expected impairment,'" Opp. at 16, this misstates the nature of the impairment analysis as well as the scope of the duty of completeness. *See Sjunde*, 2019 WL 4094559, at *14 (the duty of complete disclosure "is triggered only by speaking on a specific 'issue or topic,'" and a company's decision to speak about one topic does not "give rise to a duty to qualify [its] statements by simultaneously disclosing" information on a peripherally related topic); *Richman v. Goldman Sachs Grp., Inc.*, 868 F. Supp. 2d 261, 274 (S.D.N.Y. 2012) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject, so long as 'what was revealed would not be so incomplete as to mislead.'").

[8] The principal authority cited by Plaintiffs—a Ninth Circuit decision—lends them no support. *See* Opp. at 14–16 (citing *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1200 (9th Cir. 2016). In that case,

### B.      Defendants Made No Misstatements About Equity Bancshares' Credit Quality

Plaintiffs stand on their dubious contention that "statements about credit criteria, 'working down classified assets,' credit quality, 'percentage of nonperforming assets,' and prudent credit practices compared to other lenders" amount to misstatements of material fact. Opp. at 16. As explained in Defendants' opening brief, these statements are quintessential puffery or, at most, inactionable opinion statements. Mot. at 18–19.

Plaintiffs offer two unpersuasive responses. First, Plaintiffs counter that, "by touting Equity Bank's lending practices, Defendants put those practices at issue," and "the failure to disclose the nonperforming loans and the lowering of Equity Bank's standards is actionable." Opp. at 18, 19.

---

the Ninth Circuit largely *affirmed* the dismissal of securities fraud claims predicated on a lender's statements concerning its credit quality and its confidence that a particular borrower, who owed it tens of millions of dollars, would be able to repay its debts. *See Lloyd*, 811 F.3d at 1202–03. The complaint alleged that the lender extended additional loans to the borrower in late 2008 after the borrower advised it that it could not meet its current obligations, the lender restructured the loans in early 2009, and the borrower informed the lender in early 2010 that "it would file for bankruptcy unless the loans were modified." *Id.* at 1203–04. Later in 2010, after announcing that the borrower could not pay its debts, the lender charged off $34 million in loans and characterized the remaining $48 million as impaired. *Id.* at 1205. Throughout this period, the lender boasted of its credit quality and duly filed periodic reports with the SEC. *Id.* at 1206–07. Those reports contained not only accounting figures, but also express representations that as of November 2009, March 2010, and May 2010 this borrower "had no 'known credit problems' that 'would cause serious doubts' as to its ability to repay. *Id.* at 1207. The Ninth Circuit agreed with the district court that none of the statements were actionable, save for the representations in the March and May 2010 SEC filings, which contained an express statement (i.e., "no serious doubts") that directly contradicted undisclosed information communicated to the lender (i.e., that the borrower "could not repay its loans," "was considering bankruptcy," and "had fallen delinquent on its . . . loans and never again became current"). *Id.* at 1206–09. In other words, before reaching the lone holding that Plaintiffs tout, the Ninth Circuit ruled that (1) the lender's boasts were mere puffery, (2) any inaccuracies or GAAP violations in the lender's financials were inactionable, and (3) the November 2009 representations were not false despite the earlier loan restructuring—all rulings that cut directly against Plaintiffs' position. *Id.* As for the "no serious doubts" claim, the stark facts of *Lloyd* have no parallel here. Plaintiffs do not allege any misrepresentation of existing fact or any materially misleading omission untethered to their unsupported "repapering" and "extend-and-pretend" theories, nor can they fairly liken the "no serious doubts" affirmation in *Lloyd* to Equity Bancshares' holistic impairment analysis—a matter of opinion under this Circuit's law. *See supra* note 5 and accompanying text.

This not only misstates the duty of complete disclosure, *see supra* note 7, but assumes the truth of Plaintiffs' "extend-and-pretend" theory despite all of the contrary information set out in the Amended Complaint and the records properly before the Court, in violation of the PSLRA. *See Tellabs*, 551 U.S. at 314; *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). Second, Plaintiffs submit that "[t]his argument has been rejected by courts in similar circumstances," citing a single case from this district arising from the collapse of the subprime mortgage market. *See* Opp. at 19 (citing *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 189–90 (S.D.N.Y. 2010)). Plaintiffs make no effort to distinguish the cascade of decisions cited in Defendants' opening brief, which flatly reject similar statements as grounds for securities fraud, let alone the countless cases holding statements concerning credit quality and risk management to be puffery—including the *Lloyd* decision that Plaintiffs portray as squarely on point. *See Lloyd*, 811 F.3d at 1206–07 (affirming dismissal of securities fraud claims based on "vague, optimistic statements" about "the overall credit quality of the [lender's] loan portfolio," and the lender's "superior" credit metrics, "strong credit culture and underwriting integrity," and "limited . . . exposure to problem credits")(internal quotation marks omitted). This set of claims therefore fails as a matter of law as well.

### C.    Defendants Made No Misstatements in Financial Statements

Lastly, Plaintiffs maintain that the non-impairment of the Gigi's and Gatti's loans caused Equity Bancshares to materially misstate its financial condition in assorted SEC filings. Opp. at 20. In support, Plaintiffs contend that "[c]ourts in this district and elsewhere routinely hold that statements about loan loss reserves are materially false when, like here, a company fails to adequately account for its past due loans." *Id.* The Second Circuit, however, "has stated that 'allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim.'" *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 435

(S.D.N.Y. 2010) (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)). Further, "[w]here a plaintiff claims that a company's financial statements were misleading but fails to allege that the company violated 'a single Generally Accepted Accounting Principle ('GAAP')' or industry standard, the plaintiff falls short of plausibly alleging a misstatement or omission." *Wilbush*, 271 F. Supp. 3d at 484–85 (quoting *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 160 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016)). These standards prove fatal to Plaintiffs' claims. Plaintiffs have not plausibly pleaded *any* misstatement in Equity Bancshares' financial reports—relying, as they do, on a misapprehension of impairment and their own *ipse dixit*—nor have they identified even one GAAP or industry standard that the bank violated. *See* Mot. at 20–21. Plaintiffs' meek rejoinder that "[t]here is no GAAP provision that allows a bank to fraudulently manipulate its financial statements," Opp. at 21, inverts their pleading burden. Lacking a viable basis for alleging material falsity, this final set of claims should also be dismissed with prejudice.

## II.    Plaintiffs Fail to Allege a Cogent and Compelling Inference of Scienter

Plaintiffs' scienter allegations appear to be as follows: (1) Equity Bancshares had access to the Sovrano FDDs or something similar, which showed that the Gigi's and Gatti's loans should have been impaired sooner; (2) a confidential witness alleges the loans should have been rated an "8" instead of a "6," even though both ratings indicate problem loans and neither indicate impairment; and (3) Sovrano, Gigi's, and Keycorp filed for Chapter 11 bankruptcy protection in January 2019 but Equity Bancshares did not disclose this fact in its January 24, 2019 earnings call. Taken together, these allegations fail to raise any inference of scienter, much less the necessary "cogent" and comparatively "compelling" one the PSLRA commands. *Tellabs*, 551 U.S. at 314.

### A.    The Sovrano FDDs Do Not Give Rise to an Inference of Scienter

Plaintiffs maintain that the Sovrano FDDs show the allegedly "precarious financial position" of Gigi's and Gatti's, Opp. 24, but fail to plead what, specifically, in those documents is

inconsistent with any of Equity Bancshares' statements. In fact, the 2018 Sovrano FDD shows EBITDA of $2.7 million and adjusted EBITDA of $3.4 million. Compl. Ex. 1 at 18. Plaintiffs allege in conclusory fashion that the $2.7 million number—which was reviewed by an independent auditor who opined that the FDD "present[ed] fairly, in all material respects, the financial position of the company," *id.* at 4,—is "vastly overstated." ¶ 105. Plaintiffs fail, however, to allege that Equity Bancshares should have recognized that the EBITDA was "vastly overstated" or to explain what generally accepted accounting principles would compel that conclusion. Further, the Sovrano FDDs show only the financial state of Sovrano and its subsidiaries, Mr. Gatti's LP and Gatti's Great Pizza—they do not show Gigi's financials, as Gigi's is not a Sovrano subsidiary. Compl. Ex. 1 at 9, ¶¶ 23–26. Though Plaintiffs refer to Gatti's and Gigi's as "the Sovrano Parties," Opp. 24, and to the Sovrano FDDs as the "Sovrano/Gigi's financial statements," ¶ 105, it is clear that the Sovrano FDDs do not show Gigi's financial information. *See generally* Compl. Ex. 1.[9]

## B.    CW1's Allegations Do Not Give Rise to an Inference of Scienter

Though Plaintiffs rely heavily on the testimony of a confidential witness, CW1, Plaintiffs' opposition fails to meaningfully respond to Equity Bancshares' arguments about the inadequacy of CW1's testimony. CW1 purportedly stated that the Gigi's and Gatti's loans were given a rating of "6" but believed the loans should have been rated an "8." ¶ 101. Neither the Amended Complaint nor the opposition explains the significance of the allegation that the Gigi's and Gatti's loans were rated a "6" but should have been rated an "8." According to Plaintiffs, a rating of 6 already

---

[9] Plaintiffs also do not allege that Equity Bancshares actually had the FDDs. Plaintiffs' insist that "obviously" Equity Bancshares would have the information contained in the Sovrano FDDs and "would have reviewed this, or similar, information during, and just prior to, the class period." Opp. 24. Such allegations fall short of the exacting requirements of the PSLRA. *In re Pretium Res. Inc. Sec. Litig*., 256 F. Supp. 3d 459, 481–82 (S.D.N.Y. 2017) (requiring plaintiff to "identify with specificity the documents or way in which this contrary information was communicated to Defendants"), *aff'd sub nom. Martin v. Quartermain*, 732 F. App'x 37 (2d Cir. 2018).

indicated a problem loan on a watch list requiring quarterly write-ups, a rating of 8 does not indicate impairment (0 indicates impairment), and Plaintiffs do not allege that an "8" rating would have changed Equity Bancshares' impairment analysis or any of its SEC disclosures.

CW1's purported statements regarding the delinquency of the Gigi's and Gatti's loans fails as well. Plaintiffs admit that CW1 left the company in September of 2018—three months after the Gigi's and Gatti's loans were consolidated. ¶ 89, 101. The Class Action Complaint states that "CW1 believed that in September 2018, the Gigi's and Gatti's loans had been delinquent for approximately four to five months." ¶ 97. It is unclear how it is possible that the loans could have been delinquent for the alleged "four to five months" when (1) the loans had been consolidated three months prior, ¶ 93, and (2) no payments on the consolidated loans were due until October 2018, ¶ 98. Though Plaintiffs demand that the court accept this nonsensical allegation as true, Opp. at 27 n. 20, the Court is under no obligation to accept allegations that "make[] no sense." *Kalnit v. Eichler*, 264 F.3d 131, 140–41 (2d Cir. 2010).

**C.      The January 24, 2019 Statements Do Not Give Rise to an Inference of Scienter**

As discussed more fully in Defendants' opening brief, Equity Bancshares had no obligation to disclose the Sovrano, Gatti's, and Gigi's bankruptcies during its earnings call to discuss Q4 2018 results. That it did not so disclose does not support an inference of scienter. As Plaintiffs describe it, Equity Bancshares explained during the earnings call that it had downgraded the Gatti's and Gigi's credit relationship, but that it "d[id] not expect a credit impairment based on the collateral and circumstances." ¶ 157. Plaintiffs baldly assert that this statement was "plainly false" because Equity Bancshares increased its loan loss reserves several months later. Opp. 28. This is precisely the type of fraud by hindsight that that the Second Circuit has held to be inactionable. *See, e.g.*, *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 (2d Cir. 2014). Furthermore, the "contrary information" that Plaintiffs point to as allegedly showing

Equity Bancshares' statement was false is so vague and general that it cannot satisfy the PSLRA's exacting standards for scienter. For example, that Gigi's and Gatti's had been "struggling financially," Opp. 28, does not mean that a credit impairment was required or that it was fraud for Equity Bancshares not to expect one. And fact that Gigi's and Gatti's had filed for bankruptcy does not automatically mean that a loan impairment will occur on first priority debt collateralized by the borrowers' assets and secured by personal guaranties. *See supra* Section I.

### D.     The PSLRA's Comparative Analysis Weighs in Favor of Nonfraudulent Intent

Plaintiffs' entire theory of scienter is far less compelling than the obvious opposing inference that Equity Bancshares, not being prescient and occupying the shoes of a first priority secured lender with additional individual guaranties, believed that Gigi's and Gatti's would be able to satisfy their loan obligations. Plaintiffs admit that Equity Bancshares had a Loan Committee, a Risk Committee, and a Special Assets Committee. ¶¶ 131, 159. Equity Bancshares reviewed non-performing loans at special asset meetings, which were attended by Equity Bancshares' CEO, CFO, and Chief Credit Officer. ¶¶ 130–31. The Special Assets Committee and Risk Committee held regular meetings about delinquent loans, and executive management became involved when a loan's risk rating increased. *Id.* Meetings occurred either bi-weekly or monthly depending on the availability of Elliott, who wanted to attend every one of the meetings. ¶ 100. During these meetings—which would last all day—the group reviewed every problem loan report. *Id.* Equity Bancshares employed a rating system for their loans in which a numerical ratings were assigned to each loan. *Id.* Plaintiffs allege that the Gatti's and Gigi's loans were assigned a rating of 6, which required them to be put on a watch list and written up quarterly. ¶¶ 100–01. Thus, Plaintiffs' own allegations show that Equity Bancshares had frequent meetings (that would sometimes last all day), attended by the very highest levels of management, in which any potentially problematic loans were reviewed and discussed, including, Plaintiffs allege, the Gigi's and Gatti's loans. ¶ 159.

Moreover, those loans were placed on a watch list that required quarterly write-ups on the status of the loans. Finally, when Equity Bancshares' analysis indicated an impairment of the loans, Equity Bancshares recognized and reported that impairment. Plaintiffs argue—somewhat confusingly—that placing the loans on this watch list showed that "management did not want to address the issue." ¶ 101. How constant monitoring of the loans was failing to "address the issue" is left unexplained. Plaintiffs cannot state a claim under Section 10(b) when they "themselves plead facts undermining" their theory of fraud. *Sjunde*, 2019 WL 4094559, at *20.[10]

Rather than suggesting an intent to deceive investors, the allegations in Plaintiffs' complaint indicate that Equity Bancshares engaged in a good-faith process to inform itself of any risks involved in lending money to the Gigi's and Gatti's entities and to protect its investment should those entities become unable to make the scheduled payments. Because Plaintiffs articulate an inference of scienter that is hardly cogent, and certainly nowhere near as compelling as the opposing inference of nonfraudulent intent, their claims should be dismissed. *See Silsby v. Icahn*, 17 F. Supp. 3d 348, 369–70 (S.D.N.Y. 2014) (weighing inferences and dismissing action).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss all of Plaintiffs' claims with prejudice.[11]

---

[10] Plaintiffs also attempt to hand-wave away that the holdings of Mr. Kossover and Mr. Elliott in Equity Bancshares stock *increased* during the class period. Courts in this district routinely take account of executives' stock sales to assess scienter. *See, e.g.*, *Frankfurt-Tr. Inv. Lux. AG v. United Techs. Corp.*, 336 F. Supp. 3d 196, 218 (S.D.N.Y. 2018); *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 585 (S.D.N.Y. 2014).

[11] This Court's Individual Rules of Practice direct a party faced with a motion to dismiss to notify the Court and the movant whether it intends to file an amended pleading or rely on the pleading being attacked. Individual Practice in Civil Cases Rule 3(F). Plaintiffs already amended once and declined to amend further in response to the motion to dismiss, and the claims should be dismissed with prejudice. *See, e.g.*, *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 471 (S.D.N.Y. 2017); *see also In re Michael Stapleton Assocs. Ltd.*, No. 17-cv-5468 (AJN), 2018 WL 3962931, at *4 (S.D.N.Y. Aug. 17, 2018) (denying leave to amend pursuant to Rule 3.F).

Dated: February 19, 2020

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**


By: */s/ Mark Oakes* _____

    Mark Oakes, Texas Bar No. 24062923
    (admitted *pro hac vice*)
    mark.oakes@nortonrosefulbright.com
    Ryan Meltzer, Texas Bar No. 24092821
    (admitted *pro hac vice*)
    ryan.meltzer@nortonrosefulbright.com
    Emily Wolf, Texas Bar No. 24106595
    (admitted *pro hac vice*)
    emily.wolf@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone: (512) 474-5201
Facsimile: (512) 536-4598

Attorneys for Defendants Equity Bancshares,
Inc., Brad S. Elliott, and Gregory H. Kossover

99448767.1